UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ANDREW T. WHITCOMB

           Plaintiff,

v.                                               Case No. 19-cv-1634-pp

HAYDAR SALEH, KARL BERTRAM,
and ROBERT MIKKELSEN,

           Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING AS MOOT SECOND MOTION TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 4), DENYNING MOTION FOR TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION (DKT. NO. 6), DENYING AS MOOT MOTIONS FOR STATUS UPDATE (DKT. NOS. 10, 13) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Andrew T. Whitcomb, an inmate at Waupun Correctional Institution (WCI) who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his constitutional rights. This order resolves the plaintiff's motions for leave to proceed without prepaying the filing fee, dkt. nos. 2, 4, his motion for a temporary restraining order or preliminary injunction, dkt. no. 6, and his motions for status updates, dkt. no. 10, 13; it also screens his complaint, dkt. no. 1.

**I.**     **Motions for Leave to Proceed without Prepaying the Filing Fee (Dkt. Nos. 2, 4)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was a prisoner when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give a prisoner plaintiff the ability to proceed with

1

his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On November 22, 2019, the court ordered the plaintiff to pay an initial partial filing fee of $0.77. Dkt. No. 7. The court received that fee on January 7, 2020. The court grants plaintiff's first motion for leave to proceed without prepaying the filing fee, dkt. no 2, and denies as unnecessary (or "moot") his second motion to proceed without prepaying the filing fee, dkt. no. 4. The plaintiff must pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.    Screening the Complaint**

    A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by prisoners seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison,

668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff alleges that on August 25, 2018, he attempted suicide by swallowing two pen inserts. Dkt. No. 1 at 2. He was taken to Waupun Memorial Hospital, where defendant Dr. Haydar Saleh was the primary physician. Id. The plaintiff alleges that x-rays were ordered at the hospital, which showed the two

3

pen inserts. Id. Dr. Karl Bertram was contacted (the plaintiff does not say by whom) for a surgery consult, and on August 26, 2018, Bertram did an "EGD"—an esophagogastroduodenoscopy, https://www.hopkinsmedicine.org/gastroenterology_hepatology/clinical_services/basic_endoscopy/esophagogastroduodenoscopy.html)—to try to remove the pens. Id. Bertram was unsuccessful. Id. Bertram then had the plaintiff discharged with the two pens still inside him. Id.

The plaintiff says that between August 26 and October 31, 2018, he remained at WCI and was seen many times by the doctor there. Id. at 2–3. He had numerous x-rays, all of which showed the two pen inserts in the same place. Id. at 3. During this time, the plaintiff experienced constant severe pain. Id.

The plaintiff says that the doctor at WCI continuously called Dr. Mikkelsen, who refused to treat the plaintiff by saying that the pens would pass on their own. Id. The plaintiff says that Mikkelsen said it did not matter if it took a day or a year—he would not do anything unless then pens started to kill the plaintiff. Id. On October 31, 2018, the plaintiff was "pooping blood." Id. He was sent back to Waupun Memorial Hospital, where an x-ray and CT scan showed the inserts had punctured the plaintiff's intestines and colon. Id. The plaintiff was sent to UW-Madison Hospital where he spent the next fourteen days and underwent surgery, resulting in the loss of part of his intestines. Id. He argues that he never should have been discharged from the hospital on August 20, 2018 with the pens still inside him. Id.

For relief, the plaintiff seeks $15 million dollars from the hospital for pain and suffering, $15 million for mental and physical damages and $20 million for punitive damages. Id. at 4. He also asks that Waupun Memorial Hospital be barred from treating him. Id.

C. Analysis

The plaintiff has sued three defendants—Haydar Saleh, Karm Bertram and Robert Mikkelsen. Dkt. No. 1 at 1. The plaintiff alleges that all three defendants are employees at Waupun Memorial Hospital. Section 1983 allows plaintiffs to sue only individuals who were acting under the color of state law. Reynolds v. Jamison, 488 F.3d 756, 764 (7th Cir.2007). For that reason, the defendants in §1983 cases usually are government officials. Payton v. Rush–Presbyterian–St. Luke's Med. Ctr., 184 F.3d 623, 628 (7th Cir.1999). Private actors, however, can be sued under §1983 if the alleged constitutional deprivation is fairly attributable to the state. Rodriguez v. Plymouth Ambulance Servs., 577 F.3d 816, 823 (7th Cir. 2009).

The plaintiff does not describe the relationship between the three doctor/defendants and WCI (and, therefore, the state). He does not explain whether the doctors served in the WCI Health Services Unit (HSU), or whether his only interactions with them were when he visited the hospital. Whether a private actor can be sued under §1983 is a fact-intensive inquiry, see id. at 822–28, and the plaintiff would not likely have information about the relationship between the doctors (and the hospital for which they work) and WCI—at least not at the pleading stage. Therefore, the court will move to the

5

next step of analyzing whether the plaintiff states a claim against the doctor defendants.

The Eighth Amendment's prohibition on cruel and unusual punishment "protects prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain,'" including "grossly inadequate medical care." Lockett v. Bonson, 937 F.3d 1016, 1022 (7th Cir. 2019) (quoting Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014). To prevail on a claim based on deficient medical care, the plaintiff "must demonstrate two elements: 1) an objectively serious medical condition; and 2) an official's deliberate indifference to that condition." Id. (quoting Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011)). The first element, an objectively serious medical condition, is satisfied if "a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." Id. at 1022-23 (quoting Pyles, 771 F.3d at 409). The plaintiff alleges that he suffered from constant severe pain as a result of having swallowed two pen inserts that ultimately punctured his intestines. The court presumes that the plaintiff's condition qualifies as a serious medical need.

That leaves the question of whether the plaintiff has stated sufficient facts to show that the defendants acted with deliberate indifference. "Deliberate indifference is a subjective standard." Id. at 1023 (quoting Arnett, 658 F.3d at 751). To be found liable under the Eighth Amendment, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837 (1994)). Whether a prison official acted with the requisite state of mind "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." Id. (quoting Farmer, 511 U.S. at 842). To establish the requisite mental state, "[s]omething more than negligence or even malpractice is required." Id. (quoting Pyles, 771 F.3d at 409; see also Estelle v. Gamble, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

The plaintiff alleges that Saleh was the primary care doctor when the plaintiff arrived at the hospital after having attempted suicide. Dkt. No. 1 at 2. This is the only allegation the plaintiff makes against Saleh. The plaintiff alleges that Bertram tried to remove the pens, but that when he was unsuccessful, he had the plaintiff discharged with the pens still inside him. Id. The plaintiff says that the WCI doctor continuously called Dr. Mikkelsen, who refused to treat the plaintiff because he believed the pens would pass on their own. Id. at 3. He says that when he went back to the hospital on October 31, 2018, an x-ray and a CT scan showed the pens "that Drs. Mikkelsen and Betram refused to do anything about" had punctured his intestines and colon. Id.

The plaintiff has not stated a claim against Salah. All he says is that Saleh was the primary physician when he went into the hospital the first time. The court will dismiss Saleh as a defendant.

The plaintiff alleges that Bertram didn't remove the pens, discharging him with the pens still inside him. He says that Mikkelson refused to treat him, asserting that the pens would pass on their own, whether in a day or a year. The court does not know whether Bertram and Mikkelsen were working in the HSU at the prison, or whether they were working in concert with prison personnel. If they were, the question is whether they had subjective knowledge of the risk to the plaintiff and disregarded it. "Negligence cannot support a claim of deliberate indifference, nor is medical malpractice a constitutional violation." Tomlinson v. Sciortino, No. 19-cv-58, 2020 WL 5095325, at *2 (E.D. Wis. Aug. 28, 2020). If the defendants truly believed the pens would pass without incident and they just turned out to be wrong, that would not constitute deliberate indifference. On the other hand, if they knew there were a substantial risk that the plaintiff could be injured the longer the pens remained in him, and simply ignored that risk, they could be liable. At this early stage— recognizing that the defendants may not be state actors—the court will allow the plaintiff to proceed on deliberate indifference claims against Bertram and Mikkelsen.

### III. Motion for Temporary Restraining Order/Preliminary Injunction (Dkt. No. 6)

The plaintiff moved for a temporary restraining order or preliminary injunction preventing him from being treated at Waupun Memorial Hospital. Dkt. No. 6. To obtain preliminary injunctive relief, whether through a TRO or preliminary injunction, the plaintiff must show that (1) his underlying case has some likelihood of success on the merits, (2) no adequate remedy at law exists,

and (3) he will suffer irreparable harm without the injunction. Wood v. Buss, 496 F.3d 620, 622 (7th Cir. 2007). If the plaintiff shows those three factors, the court must balance the harm to each party and to the public interest from granting or denying the injunction. Id.; Korte v. Sebelius, 735 F.3d 654, 665 (7th Cir. 2013); Cooper v. Salazar, 196 F.3d 809, 813 (7th Cir. 1999).

The plaintiff has not shown that he will suffer irreparable harm without the injunction—he has not shown he would suffer any harm at all. He asks the court for injunctive relief because he thinks 1) the prior care he received was inadequate and 2) if he must return to the hospital in the future, the hospital may not offer him sufficient care based on him filing this lawsuit.[1] But the plaintiff does not say he is receiving care at the hospital or, if he is, that the care has been deficient. His motion is based on conjecture and speculation about what *might* happen, and that is not enough support injunctive relief. City of Los Angeles v. Lyons, 461 U.S. 95, 110 (1983); Palmer v. City of Chi., 755 F.2d 560, 572 (7th Cir.1985). The court denies the motion.

## IV. Motions for Status Updates (Dkt. Nos. 10, 13)

In his first motion for a status update, the plaintiff asked the court for an order to use funds from his release account to pay his initial partial filing fee. Dkt. No. 10. He filed that motion the same day the court granted his previous

---

[1] In his second motion asking for a status update, the plaintiff still speaks in terms of "if." He says, "*if* [he] continue[s] to go to Waupun Memorial Hospital" then the doctors he is suing "*will* continue to give [him] less than adequate medical attention" for filing his lawsuit. Dkt. No. 13. He does not say that he has been going to the hospital and getting deficient treatment. The court also notes that the defendants have not been served with the complaint; there is no reason they would even know about the lawsuit.

9

motion to use his release account to pay the fee, and the plaintiff since has paid the initial partial filing fee. The court denies the motion as moot.

In his second motion for a status update, he asks for information about his case. Dkt. No. 13. Given that this order screens his complaint and addresses his outstanding motions, his motion to check on the status of his case is denied as moot.

## V. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES as moot** the plaintiff's second motion for leave to proceed without prepaying the filing fee. Dk. No. 4.

The court **DENIES** the plaintiff's motion for a temporary restraining order/preliminary injunction. Dkt. No. 6.

The court **DENIES as moot** the plaintiff's motions for status updates on his case. Dkt. Nos. 10, 13.

The court **ORDERS** that defendant Haydar Saleh is **DISMISSED** as a defendant.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the complaint and this order on defendants Karl Bertram and Robert Mikkelsen under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any provision for either the court or the U.S. Marshals

10

Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** that defendants Bertram and Mikkelsen must file a responsive pleading to the complaint.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$349.23** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined.

The court will issue a separate order **REFERRING** this case to Magistrate Judge William E. Duffin for pretrial matters.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for discovery and dispositive motions.

11

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the matter.

The court advises the plaintiff that, if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The plaintiff is reminded that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his whereabouts may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner

---

[2] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 29th day of September, 2020.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**